ST. LOUIS TWIN OAKS ASSOCIATES I, L.P., Plaintiff,

v.

EXECUTIVE OFFICE NETWORK, LTD., d/b/a the Headquarters Companies, Defendant/Third Party Plaintiff,

v.

Erin SHOCKLEE, as Statutory Trustee for Professional Business Centers, Inc., Third Party Defendant.

No. 91–0279C(6).

United States District Court, E.D. Missouri, E.D.

Oct. 9, 1992.

Ziercher & Hocker, P.C., Gary L. Vincent, James D. Eckhoff, St. Louis, Mo., for plaintiff.

Barken & Bakewell, C. Michael Bakewell, St. Louis, Mo., for Executive Office Network.

Biggs & Hensley, P.C., Mark A. Brittingham, St. Louis, Mo., for Shocklee.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment. St. Louis Twin Oaks Associates I, L.P. (Twin Oaks), filed this diversity action against Executive Office Network, Ltd. (Executive), for rent due under a lease. The record establishes the following. On March 26, 1980, Twin Oaks leased office space to Executive from July 1, 1980 to September 30, 1990. The space was deemed to contain 35 offices which, the parties understood, Executive's franchisee would sublease to third parties. The rent due from Executive to Twin Oaks consisted of a monthly base rent plus an adjustable rent depending upon the number of units sublet. The base rent was to increase at certain points during the lease term according to a specific formula. Executive, provided it was not in default, had the option to extend the term of the lease by five years upon written notice by September 30, 1987.

On October 11, 1985, Twin Oaks and Executive entered into an amendment to the lease changing the method of calculating the periodic increases to the base rent in order to lower Executive's obligations. Under the amendment, the monthly base

rent was $14.22 per square foot from October 1, 1986, through September 30, 1989, and $15.72 per square foot from October 1, 1989, through September 30, 1990. On June 30, 1987, Executive, with Twin Oaks's approval, assigned the lease to Professional Business Associates, Inc. (Professional). The assignment specified that it did not release Executive from its obligations under the lease.

On September 24, 1987, after Professional fell into default, Twin Oaks and Professional executed a second amendment to the lease. This amendment extended the term of the lease by two years and changed the base rent schedule to $14.22 per square foot through September 30, 1990, and $15.72 during the two year extension. Professional's president, Erin M. Shocklee, personally guaranteed two months rent ($19,-514.58) in the event of default. It is undisputed that Executive did not know about the second amendment to the lease.

Professional continued to default on the rent and in May 1988, when approximately $30,000 was owed, Twin Oaks proposed a monthly repayment plan; Executive never accepted this proposal. In October 1988 Professional executed a promissory note in favor of Twin Oaks in the amount of $29,-964 plus interest, representing the unpaid rent from January 1988 through April 1988; the note was personally guaranteed by Shocklee.

On May 26, 1989, Twin Oaks notified Executive of the default and made demand for the entire arrearage ($74,896.04). Twin Oaks sent Executive additional notices and demands in August 1989 (arrearage of $83,480.79) and January 1990 (arrearage of $103,445.57). In February 1990 Twin Oaks terminated the lease, Professional vacated the premises and in March 1990 Twin Oaks relet them to a party that began paying rent September 1, 1990.

Twin Oaks filed this action against Executive for $186,578.42 (which Twin Oaks asserts constitutes the rent due through September 30, 1990, under the reduced terms of the second amendment to the lease), plus interest, plus expenses of reletting the premises, minus rent received for September 1990 from the new tenant. Executive filed a third party complaint against Shocklee individually and as statutory trustee for Professional; Shocklee has been voluntarily dismissed (without prejudice) in her individual capacity.

█ Generally, the assignment of a lease by a lessee does not release the lessee of liability under the lease. *See Jenkins v. John Taylor Dry Goods Co.*, 179 S.W.2d 54, 352 Mo. 660 (1944). If, however, the lessor and assignee "materially change the terms of the lease ... a new tenancy relationship is established and the assignor is released from his obligations under the original lease." *Jedco Dev. Co. v. Bertsch*, 441 N.W.2d 664, 667 (N.D.1989). " 'The [assignor/] lessee is not discharged, however, by variations which inure to his benefit ... [n]or by agreements between the lessor and assignee which may increase the liability of the lessee but which are permitted by the terms of original lease, to the benefits of which the assignee is entitled.' " *Id.* (quoting *Walker v. Rednalloh Co.*, 299 Mass. 591, 595–96, 13 N.E.2d 394, 397 (1938)).

For summary judgment, Twin Oaks argues that the second amendment to the lease, although executed without Executive's knowledge, did not release Executive of its obligations under the lease because the amendment *reduced* the rent to Professional, and the two year extension was executed within the terms of the original lease and Twin Oaks is only seeking rent due through the original term of the lease. Twin Oaks also argues that reletting the premises in March 1990 did not release Executive.

Executive argues that (1) the second amendment, the May 1988 agreement and the October 1988 promissory note, individually and collectively, served to release Executive of any liability under the lease; (2) Twin Oak's failure to inform Executive of Professional's default earlier, and the changes agreed upon by Twin Oak and Professional evidence Twin Oak's bad faith precluding recovery from Executive; and (3) there is a material issue of fact as to the amount owed under the lease due to the

varying figures given by Twin Oaks in its complaint, answers to interrogatories ($182,859.76) and motion for summary judgment ($172,884.60).

The Court first rejects Executive's reliance on *Citizens Bank v. Lair,* 687 S.W.2d 268 (Mo.Ct.App.1985), for the proposition that even a change in the lease beneficial to the assignor vitiates the assignor's obligations under the original lease. First, that case involved the law of guarantors and sureties which is not directly applicable here; second, in *Citizens Bank* the change in the primary contract *increased* the interest rate thus rendering the comment about beneficial changes dictum; and third, Twin Oaks has cited an Eighth Circuit case, *Continental Bank & Trust Co. v. American Bonding Co.,* 605 F.2d 1049, 1056 (8th Cir. 1979), which holds that under Missouri law a surety is not released from its liability unless there is an alteration in the underlying contract which materially *increases* the surety's risk.

 The Court finds persuasive the authority cited by Twin Oaks that a lease modification *reducing* rent after an assignment does not discharge an original lessee from liability. *See Carrano v. Shoor,* 118 Conn. 86, 171 A. 17 (1934). Although, contrary to Twin Oaks's assertion, Professional was not entitled to extend the term under the original leases (as amended by the first amendment) because it was in default at the time, the Court believes the extension is immaterial because Twin Oaks is only seeking rent due for the original ten-year term.

The Court believes, however, that the May 1988 repayment plan proposed by Twin Oaks to Professional, and more significantly, execution of the October 1988 promissory note, may evidence an intent on Twin Oak's part to create a new tenancy relationship with Professional. *See Keith v. McGregor,* 163 Ark. 203, 259 S.W. 725, 727 (1924) (acceptance by lessor of promissory note from assignee was tantamount to treating rent due as assignee's debt and had effect in law of releasing lessee from obligation to pay rent).

Twin Oaks has not established as a matter of law that it did not intend to create a new tenancy relationship with Professional, thereby releasing Executive from liability. Thus, Twin Oaks is not entitled to summary judgment. *See Jedco Dev. Co. v. Bertsch,* 441 N.W.2d at 668 (summary judgment in favor of lessor in suit against lessee for rent after assignee defaulted reversed because genuine issue of material fact existed as to whether lessor, by changing terms of lease, intended to create new contract with assignee).

Accordingly,

IT IS HEREBY ORDERED that plaintiff Twin Oaks Associates I, L.P.,'s motion for summary judgment is denied.